IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MOHAMMAD SALAUDDIN SARKER,          §
                                    §
          Petitioner,               §
                                    §
VS.                                 §          No. 4:19-CV-462-Y
                                    §
BRYAN COLLIER, et al.,              §
                                    §
          Respondent.               §


**OPINION AND ORDER**

Before the Court is petitioner Mohammad Salauddin Sarker's petition for writ of habeas corpus filed under 28 U.S.C. § 2254. After having considered the petition and relief sought by Petitioner, the Court has concluded that the petition should be dismissed in part as time-barred, dismissed in part as procedurally barred, and denied in part.

**I. FACTUAL AND PROCEDURAL HISTORY**

Petitioner, a Bangladeshi national, was in the United States on a student visa while enrolled in flight school to become a commercial pilot. (Pet'r's Mem. 3, doc. 18.) On January 23, 2012, he was arrested for evading arrest or detention with a motor vehicle in Erath County, Texas. (Id. at 1.) On January 25, 2013, pursuant to a plea agreement, he pleaded guilty to the offense and was placed on deferred adjudication community supervision for five

years. (SHR01[1] 109, doc. 21-1; Supp. SHR01 28-32, doc. 21-4.) He did not appeal the order of deferred adjudication. Following the plea proceedings, he was deported, either voluntarily or involuntarily, and reentered the United States on one or more occasions. On August 26, 2014, the state moved to adjudicate Petitioner's guilt based on multiple alleged violations of the conditions of his release. (SHR01 122-27, doc. 21-1.) Just over three years later, on August 29, 2017, pursuant to a plea agreement, Petitioner pleaded "true" to the allegations and the trial court adjudicated his guilt and sentenced him to two years' confinement. (SHR01 122-27, doc. 21-1.) Thereafter, Petitioner challenged his conviction in two post-conviction state habeas-corpus applications. The first, filed on March 1, 2018, was denied by the Texas Court of Criminal Appeals on August 22, 2018, without written order on the findings of the trial court.[2] (Id. at 22; Action Taken, doc. 21-7.) The second, filed on December 14, 2018, was dismissed by the Texas Court of Criminal Appeals on April 17, 2019, as a successive application. (SHR02 28, doc. 21-10; Action Taken, doc. 21-12.) This federal habeas petition, filed on May 31,

---

[1]"SHR01" refers to the record of Petitioner's state habeas proceeding in WR-88,415-01; "SHR02" refers to the record of Petitioner's state habeas proceeding in WR-88,415-02.

[2]A prisoner's state habeas application is deemed filed when placed in the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013). Although Petitioner's state applications do not reflect the date he placed the documents in the prison mailing system, for purposes of this opinion, the documents are deemed filed on the dates they were signed by Petitioner.

2019, followed.[3] (Pet. 24, doc. 3.[4]) Telephonic communication with the parole division of the Texas Department of Criminal Justice informs the Court that prior to filing the instant petition, Petitioner was placed on supervised release and released into the custody of the U.S. Immigration and Customs Enforcement ("ICE"), where he remains confined pending deportation proceedings.

## II. ISSUES

Petitioner's grounds for relief are construed as follows:

(1) he is actually innocent of the crime (grounds one and two);

(2) there was no evidence to support his conviction (ground three);

(3) he was denied court-appointed counsel at his arraignment (ground four);

(4) he received ineffective assistance of counsel (grounds five and seven);

(5) his pleas of guilty and "true" were unknowing and involuntary (grounds six, eight); and

(6) he has been subjected to cruel and unusual punishment (ground nine).

(Id. at 1.)

## III. RULE 5 STATEMENT

Respondent believes that Petitioner's claims are time-barred

---

[3]Likewise, a prisoner's federal habeas petition is deemed filed when placed in the prison mailing system. *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

[4]Because there are pages inserted into the form petition, the pagination in the ECF header is used.

in part, and unexhausted and procedurally defaulted in part.
(Resp't's Answer 4-5, doc. 19.)

## IV. STATUTE OF LIMITATIONS

Respondent asserts that the petition as it relates to Petitioner's original guilty plea in grounds one through six is barred by the federal statute of limitations. (Id. at 5-8.) Title 28, United States Code, § 2244(d) imposes a one-year statute of limitations on federal petitions for writs of habeas corpus filed by state prisoners. Section 2244(d) provides:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

4

28 U.S.C. § 2244(d)(1)-(2).

Petitioner's grounds one through six involve matters relating to the original plea proceedings. As to these claims, the one-year limitations period began to run on the date the order of deferred adjudication became final upon expiration of the time that Petitioner had for filing a notice of appeal on Monday, February 25, 2013, and expired one year later on February 25, 2014, absent any tolling. *See Caldwell v. Dretke*, 429 F.3d 521, 530 (5th Cir. 2005).

Tolling of the limitations period may be appropriate under the statutory tolling provision in § 2244(d)(2) and/or as a matter of equity. For purposes of statutory tolling, Petitioner's state habeas applications filed after limitations had already expired did not operate to toll the limitations period. *Scott v. Johnson,* 227 F.3d 260, 263 (5th Cir. 2000). Therefore, this federal petition, filed on May 31, 2019, is untimely unless Petitioner can demonstrate that equitable tolling is justified.

To justify equitable tolling, a petitioner must show (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way and prevented him from filing a timely petition or he can make a "convincing showing" that he is actually innocent of the crime for which he was convicted. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408 (2005)). A petitioner attempting to overcome the expiration of the statute of limitations by showing actual innocence is required to

produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"—sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin,* 569 U.S. at 386 (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)). The petitioner bears the burden to establish that equitable tolling is justified. *Holland,* 560 U.S. 649.

Although actual innocence, if proven, can overcome the statute of limitations, Petitioner waived his actual-innocence claims by entering a voluntary and knowing guilty plea to the offense.[5] *See United States v. Vanchaik-Molinar,* 195 Fed. App'x 262, 2006 WL 2474048, at *1 (5th Cir. 2006) ("A voluntary guilty plea waives all non-jurisdictional defects that occurred prior to the plea and precludes consideration of a claim challenging the sufficiency of the evidence."). Even if *McQuiggin* applies in the context of a guilty plea, it is well settled under Texas law that a judicial confession, standing alone, is sufficient evidence to sustain a conviction. *See Dinnery v. State,* 592 F.2d 343, 353 (5th Cir. 1979). Moreover, there is no federal constitutional requirement that a state court establish a factual basis to corroborate a guilty plea in a state criminal prosecution prior to its acceptance

---

[5] Both the reporter's record of the plea proceeding and the documentary record support a presumption of regularity and the state court's implied finding that Petitioner's guilty plea was knowingly and voluntarily made.

unless the state judge has specific notice that a factual inquiry is needed, such as when an accused asserts his innocence in conjunction with his plea. *See Orman v. Cain,* 228 F.3d 616, 621 (5th Cir. 2000); *Smith v. McCotter,* 786 F.3d 697, 702 (5th Cir. 1986). In any event, in this habeas proceeding, Petitioner has not made a colorable showing that he is actually innocent in light of "new evidence." He merely asserts that he was an inexperienced driver, that he was not impaired, that he was driving at the posted speed limit, that it was not a high-speed chase, and that he did not intentionally flee from the officer. (Pet. 5, 7, doc. 3.) Although he asserts that he is actually innocent, he makes no such showing based on "new evidence."

Petitioner also complains of no, or inadequate, prison law libraries. (Pet'r's Reply 1, 6, doc. 23.) However, an inadequate law library generally does not constitute rare and exceptional circumstances warranting equitable tolling. *See Scott v. Johnson,* 227 F.3d 260, 263 & n.3 (5th Cir. 2000). Nor do Petitioner's ignorance of the law, pro-se status, and unfamiliarity with the English language constitute rare and exceptional circumstances warranting equitable tolling. (Id. at 1, 5-6.) These are common problems among prisoners seeking post-conviction relief. (Id. at 1, 5-6.) *See Fisher v. Johnson,* 174 F.3d 710, 714 (5th Cir. 1999); *Perez v. Davis,* No. 4:17-CV-882-Y, 2018 WL 4304890, at *3 (N.D. Tex. 2018); *Yang v. Archuleta,* 525 F.3d 925, 929-30 (10th Cir. 2008); *Cobas v. Burgess,* 306 F.3d 441, 444 (6th Cir. 2002).

Finally, Petitioner complains that he was not advised that if he were deported, he would have to report to a parole officer upon his reentry into the United States. (Id. at 6.) However, Petitioner's ignorance of his parole requirements upon reentry into the country has no relevance to the limitations issue

Because Petitioner fails to establish his actual innocence or rare and exceptional circumstances that justify equitable tolling, his federal petition is untimely as to his grounds one through six.

## V. PROCEDURAL DEFAULT

Respondent asserts that the petition as it relates to Petitioner's grounds eight and nine are unexhausted and procedurally barred from this Court's review. (Resp't's Answer 8-10, doc. 19.)

Petitioners seeking habeas-corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-48 (1999); *Fisher,* 169 F.3d at 302; Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982). In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals. *Richardson v. Procunier,* 762 F.2d 429, 431-32 (5th Cir. 1985). Therefore, a Texas prisoner may satisfy the

exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas-corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure in a procedurally proper manner. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2015); *Depuy v. Butler,* 837 F.2d 699, 702 (5th Cir. 1988).

Contrary to Respondent's assertion, a review of the state-court records reveals that Petitioner's claim under ground eight was sufficiently raised in his first state habeas application, *albeit,* in the context of an ineffective-assistance claim, which was considered by the state courts. (SHR01 19, doc. 21-1.) Consequently, the claim is addressed in this opinion to the extent it was exhausted in state court.

Review of the records does, however, reveal that Petitioner raised his ninth ground for the first time in his second state habeas application, which was dismissed as a subsequent application by the Texas Court of Criminal Appeals. (SHR02 23, 25, doc. 21-10.) A state prisoner is procedurally barred from obtaining federal habeas review of a claim raised in a state habeas application that was dismissed as subsequent, absent a showing of cause for failing to raise the claim in an initial state habeas application and prejudice or a showing that failure to review the claim would result in a fundamental miscarriage of justice. *See Sawyer v.*

*Whitley,* 505 U.S. 333, 338 (1992); *Ylst v. Nunnemaker,* 501 U.S. 797, 801-07 (1991); *Smith v. Johnson,* 216 F.3d 521, 523-24 (5th Cir. 2000). Petitioner provides no excuse for his failure to properly exhaust the claim in state court nor has he made a showing that dismissal of the claim because of the procedural default would constitute a miscarriage of justice. Consequently, his claim under ground nine is procedurally barred from this Court's review.

## VI. DISCUSSION

Based on the Court's procedural rulings in this and the previous sections, the following discussion pertains only to Petitioner's grounds seven and eight. A §2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). See 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *See* 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The Act also requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption of correctness applies to both express and implied findings of fact. *Valdez v. Cockrell,* 274 F.3d 941, 948 (5th Cir. 2001). In such a situation, a federal court may infer fact findings consistent with the state court's disposition and assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Schartzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez,* 274 F.3d at 948 n.11; *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997). A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Further, when the Texas Court of Criminal Appeals denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Singleton v. Johnson,* 178 F.3d 381, 384 (5thj Cir. 1999); *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

Under his seventh and eighth grounds, Petitioner claims that

he received ineffective assistance of revocation counsel, Scott
Osman, during the adjudication proceedings and that, due to
counsel's ineffectiveness, he pleaded "true" to the alleged
violations of his probation. (Pet. 15, doc. 3.) More specifically,
he appears to contend that counsel was ineffective by failing to
"set bond" for him; failing to file a motion to reopen his case "or
any other option to take his guilty plea back"; failing to advise
him that he would be "in trouble by immigration" if he accepted the
2-year plea; and erroneously advising him that he would be eligible
for parole in two months. (Id.)

In an affidavit filed in Petitioner's original state habeas
proceeding, with supporting documentary evidence, counsel detailed
his representation of Petitioner as follows:

> I first spoke with [Petitioner] on August 9, 2017.
> Prior to that date, I had no knowledge of [Petitioner],
> his criminal history, the State's Motion to Adjudicate,
> or [Petitioner]'s violations of the terms and conditions
> of his probation.
>
> After quoting my fee to represent [Petitioner] in
> his adjudication proceeding, [Petitioner] asked me how
> much more it would cost to get a bond and I responded
> that I would speak to the District Attorney regarding a
> bond at no additional cost.
>
> On August 10, 2017, I accepted partial payment of my
> fee with assurances that the remainder of my fee would be
> paid within two weeks. I then sent a letter of
> representation to the District Attorney and spoke with
> the Assistant District Attorney, who informed me that
> [Petitioner] had an ICE hold. Thereafter, I called
> [Petitioner] to advise him that because an immigration
> detainer was placed on him, he was not eligible to
> receive a bond. [Petitioner] replied that he was in the
> country legally, that he was not guilty of evading

arrest, that he should have never been on probation, and that he wanted me to reopen his case so that he could take back his guilty plea. I explained to [Petitioner] that I could not reopen his case and that at this point, the only question for the Judge was whether or not he had violated a term or condition of probation as alleged by the State.

After my conversation with [Petitioner], I inquired further regarding the ICE hold and on August 11, 2017, the District Attorney's office sent me a copy of the Department of Homeland Security's Immigration Detainer – Notice of Action regarding [Petitioner].

On August 11, 2017, I went through each allegation of the State's Motion to Adjudicate Guilt with [Petitioner] and he told me that each violation alleged by the State was true. On that same day, I mailed a copy of the State's Motion to Adjudicate Guilt to [Petitioner].

On August 14, 2017, I visited [Petitioner] at the Erath County Jail. During said visit, [Petitioner] executed an affidavit representing that I had explained the law applicable to his case to  him and that I had answered all of his questions. He further represented that he was voluntarily entering his plea of true to all of the allegations contained in the State's Motion to Adjudicate, being fully aware of all possible consequences, because he was in fact guilty of violating each and every condition of probation alleged in the State's Motion to Adjudicate. . . .

At [Petitioner]'s request I communicated with his immigration attorney and his friend to attempt to resolve the ICE hold. During this time, I continued discussions with the Assistant District Attorney in an attempt to get [Petitioner] a plea offer that did not involve incarceration.

On August 22,2017,I again met with the Assistant District Attorney to discuss a resolution to [Petitioner]'s case. The ADA extended a plea bargain offer of two years incarceration in the Texas Department of Corrections with no fine. The ADA also was amenable to conferring with the visiting judge prior to the hearing to see if the judge would be inclined to give [Petitioner] probation instead of sending him to jail.

Thereafter, [Petitioner] was advised of this discussion and specifically, the plea bargain offered for his consideration.

On August 28, 2017, I visited [Petitioner] at the Erath County Jail. I again advised [Petitioner] that in pleading true to the State's allegations, the Judge would adjudicate and convict him and thereafter, could place [Petitioner] on probation or sentence [Petitioner] from anywhere between two to ten years in the Texas Department of Corrections. I further advised [Petitioner] that if he accepted the State's offer, neither myself, the District Attorney or the Judge could tell [Petitioner] when, and if, he would be paroled as all decisions regarding parole eligibility would be determined by the Board of Pardons and Parole.

On August 28, 2017, [Petitioner] again executed an affidavit representing that I had explained the law applicable to his case to him and that I had answered all of his questions. He further represented that he was voluntarily entering his plea of true to all of the allegations contained in the State's Amended Motion to Adjudicate, being fully aware of all possible consequences, because he was in fact guilty of violating each and every condition of probation alleged in the State's Amended Motion to Adjudicate. . . .

[Petitioner] was well aware prior to August 29, 2017, that the District Attorney was not offering probation, but rather the plea bargain offered was to adjudicate [Petitioner]'s guilt and send him to the Texas Department of Corrections for two years. [Petitioner]'s assertion that he had only 10 minutes to decide on the District Attorney's plea offer is patently false. [Petitioner] had known about the plea bargain offer a week in advance of his court date, but had not accepted the State's offer until the morning of court.

On August 29,2017, the Assistant District Attorney and myself did meet with the Judge and after our discussion, the Judge wanted to defer any decision until after he heard the evidence. This was immediately communicated to [Petitioner].

Prior to [Petitioner] appearing in open court on August 29, 2017, I again advised [Petitioner] that based on his plea of true, the Judge would adjudicate and

convict him and thereafter, could place [Petitioner] on probation or sentence [Petitioner] from anywhere between two to ten years in the Texas Department of Corrections. I told [Petitioner] that if he accepted the State's offer, he would receive 32 days of time credit and again advised him that I had no control over when, and if, he would be paroled by the Board of Pardons and Parole.

On January 18, 2018, I responded to a letter I had received from [Petitioner] complaining of my legal services. . . .

On February 5, 2018, I responded to a second letter I had received from [Petitioner] complaining of my legal services. . . .

[Petitioner]'s allegations that I provided him with ineffective assistance of counsel are ludicrous. [Petitioner]'s complaint against me at its core is that although he was guilty of not complying with even one term of his probation, he should not be in jail. Based on the fact that [Petitioner] never complied with any term of his probation and admitted to me on multiple occasions that every one of the State's allegations were true, an adjudication of his guilt was inevitable.

[Petitioner] voluntarily and knowingly pled true to all allegations in open court. [Petitioner], in accepting the plea bargain offer, chose to not risk the possibility of receiving a longer sentence from the Judge than was being offered by the State.

I returned every phone call [Petitioner] made to my office, including those after my representation of his interests had ended, and responded to his letters. I spoke with the Erath County District Attorney's office many times regarding the possibility of a bond and a disposition of [Petitioner]'s case, as well as exchanging correspondence with the State. Additionally, at [Petitioner]'s request, I spoke to his immigration attorney and his friend and exchanged emails with both individuals in an attempt to resolve his immigration detainer.

I can state with certainty that my representation of [Petitioner] did not fall below an objective standard of reasonableness.

Finally, based on the totality of the facts as herein stated, along with the exhibits attached hereto, I have absolutely no reason to doubt that on August 29, 2017, [Petitioner] entered his plea of true to all of the allegations contained in the State's Amended Motion to Adjudicate in Cause Number CR13740, freely and voluntarily, intelligently and with full knowledge of all possible consequences.

(SHR01 52-57, doc. 21-1.)

Neither the United States Supreme Court nor the Fifth Circuit has delineated the constitutional standards, if any, that apply to a plea of true during a proceeding to revoke community supervision. However, district courts within this circuit have assumed that a plea of true to revocation allegations must be entered voluntarily and intelligently in the same manner as a plea of guilty to criminal charges. *See Martin v. Dir., TDCJ-ID,* No. 1:12-CV-166, 2014 WL 1813309, at *4 (May 2, 2014); *Martinez v. Quarterman,* No. 3:07-CV-0619-M, 2009 WL 855960, at *5 (W.D. Texas. Mar. 30, 2009); *Robinson v. Dretke,* No. 3:03-CV-2838-B, 2005 WL 1249485, at *4 (N.D. Tex. May 25, 2005), *adopted by* Order (June 17, 2005) (Boyle, J.); *Whitten v. Cockrell,* No. 3:07-CV-0619-M, 2003 WL 21509163, at *11 (N.D. Tex. Apr. 11, 2003). That not withstanding, to successively state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984). In this context, the petitioner must show a reasonable probability that, but for

16

deficiencies of counsel, he would not have admitted the probation violations and would have insisted that the state prove them. *See Whitten,* 2003 WL 21509163, at *11.

In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams,* 529 U.S. at 410); *Bell v. Cone,* 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

In evaluating Petitioner's ineffective-assistance-of-counsel claims, the state courts made no particularized findings. (SHR01 106, doc. 21-1.) Accordingly, this Court will infer fact-findings

consistent with the state courts' rejection of the claims and, absent evidence that an incorrect standard was applied, assume the state courts applied the *Strickland* standard in rejecting Petitioner's claims. Having done so, the Court cannot say that the state courts' decision was objectively unreasonable.

Counsel is not required to make frivolous motions or objections. *See Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002). Thus, counsel was not ineffective by failing to obtain a bond for Petitioner, who was subject to a federal detainer. Further, under state law, a motion to withdraw a plea is untimely once a plea has been taken under advisement or guilt has been adjudicated). *See DeVary v. State,* 615 S.W.2d 739, 740 (Tex. Crim. App. 1981). Therefore, any motion to reopen the case or withdraw Petitioner's original guilty plea over four years later would have been futile.

Additionally, Petitioner's claims that counsel failed to advise him that he would be "in trouble by immigration" if he accepted the 2-year plea and erroneously advised him that he would be eligible for parole in two months, are refuted by counsel's affidavit. (Id.) Clearly, the state habeas judge, who also presided over the trial-court proceedings, found counsel's affidavit credible, and the credibility finding is presumed correct absent clear and convincing evidence in rebuttal. Petitioner's claims, after the fact, unsupported by any credible evidence, are

insufficient to rebut the presumption that he received effective assistance of counsel and the presumption of regularity of the state-court records. *See Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974) (holding state court records "are entitled to a presumption of regularity"). Therefore, Petitioner cannot satisfy the first prong of the *Strickland* standard.

Nor has Petitioner demonstrated prejudice. On the contrary, Petitioner acknowledged by his signature on court documents his understanding of the terms and conditions of his probation and that such probation could be revoked for the violation of any one of the conditions of his release. (SHR01 111-13, 115, doc. 21-1.) Petitioner unequivocally admitted to counsel that he had, in fact, violated the terms and conditions of his release as alleged by the state and nothing in the record suggests that he misunderstood counsel's explanations and admonitions concerning the motion to adjudicate, his legal options related thereto, and the consequences of his plea. (SHR01 115, doc. 21-1.) Therefore, the record supports the state courts' implied finding that Petitioner pleaded true freely and voluntarily to the allegations after counsel explained his various legal rights with regard to the motion to adjudicate, the potential punishment he faced on the motion to adjudicate, and the strength of the state's evidence supporting the allegations in the motion to adjudicate.

Because Petitioner has failed to show that counsel rendered

ineffective assistance or that his plea of true was rendered involuntary as a result of ineffective assistance of counsel, he is not entitled to federal habeas relief.

### III.   CONCLUSION

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is DISMISSED in part as untimely as to grounds one through six, DISMISSED in part as procedurally barred as to ground nine, and denied in part as to grounds seven and eight.

Further, a certificate of appealability will not be issued. Such a certificate may issue "only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). When the district court denies the petition on procedural grounds without reaching the merits, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (quoting *Slack,*

529 U.S. at 484). Petitioner has not made a showing that reasonable jurists would question this Court's resolution of Petitioner's constitutional claims and/or procedural rulings. Therefore, a certificate of appealability should not issue.

SIGNED February 13, 2020.

_Terry R. Means_

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE